1

2

3

4

5

6

7          **UNITED STATES DISTRICT COURT**

8          **EASTERN DISTRICT OF CALIFORNIA**

9

10

| | |
|---|---|
| 11  RENE J. ZAMORA, | Case No. 1:12-cv-00943-LJO-SKO-HC |
| 12          Petitioner, | ORDER SUBSTITUTING WARDEN SCOTT FRAUENHEIM AS RESPONDENT |
| 13      v. | FINDINGS AND RECOMMENDATIONS TO DISMISS AND DENY THE PETITION FOR |
| 14 | WRIT OF HABEAS CORPUS (DOC. 1), DENY PETITIONER'S MOTION FOR AN |
| 15 | EVIDENTIARY HEARING (DOC. 1), DIRECT THE ENTRY OF JUDGMENT FOR |
| 16  SCOTT FRAUENHEIM, Warden, | RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY |
| 17          Respondent. | |
| 18 | **OBJECTIONS DEADLINE:** |
| | **THIRTY (30) DAYS** |

19

20     Petitioner is a state prisoner proceeding pro se and in forma

21 pauperis with a petition for writ of habeas corpus pursuant to 28

22 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge

23 pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304.

24 Pending before the Court is the petition, which was filed on June

25 11, 2012.  Respondent filed an answer on October 3, 2012, and

26 Petitioner filed a traverse on December 10, 2012.

27     I.   Jurisdiction and Order Substituting Respondent

28     Because the petition was filed after April 24, 1996, the

1

effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Tulare (TCSC), located within the jurisdiction of this Court. 28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d). Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights. Accordingly, the Court concludes it has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. - , -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Martin Biter whohad custody of Petitioner at Petitioner's institution of confinement when the petition and answer were filed. (Docs. 1 & 16.) Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules). <u>See Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994). The fact that Petitioner was transferred to Pleasant Valley State Prison (PVSP) after the petition was filed does not affect this Court's jurisdiction. Jurisdiction attaches on

1  the initial filing for habeas corpus relief, and it is not destroyed

2  by a transfer of the petitioner and the accompanying custodial

3  change.  <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990) (<u>citing</u>

4  <u>Smith</u> v. <u>Campbell</u>, 450 F.2d 829, 834 (9th Cir. 1971)).

5      Accordingly, the Court concludes that it has jurisdiction over

6  the person of the Respondent.  However, in view of the fact that the

7  warden at PVSP is Scott Frauenheim, it is ORDERED that Scott

8  Frauenheim, Warden of Pleasant Valley State Prison, be SUBSTITUTED

9  as Respondent pursuant to Fed. R. Civ. P. 25.[1]

10      II.  <u>Background</u>

11      In a habeas proceeding brought by a person in custody pursuant

12  to a judgment of a state court, a determination of a factual issue

13  made by a state court shall be presumed to be correct; the

14  petitioner has the burden of producing clear and convincing evidence

15  to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1);

16  <u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48 (9th Cir. 2004).  This

17  presumption applies to a statement of facts drawn from a state

18  appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1

19  (9th Cir. 2009).  The following procedural history and statement of

20

21  _____

[1] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a
22  civil action in an official capacity dies, resigns, or otherwise ceases to hold
office while the action is pending, the officer's successor is automatically
23  substituted as a party. It further provides that the Court may order substitution
at any time, but the absence of such an order does not affect the substitution.
24     The Court takes judicial notice of the identity of the warden from the
official website of the California Department of Corrections and Rehabilitation
25  (CDCR), <u>http://www.cdcr.ca.gov</u>.  The Court may take judicial notice of facts that
are capable of accurate and ready determination by resort to sources whose
26  accuracy cannot reasonably be questioned, including undisputed information posted
on official websites.  Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989
27  F.2d 331, 333 (9th Cir. 1993); <u>Daniels-Hall v. National Education Association</u>, 629
F.3d 992, 999 (9th Cir. 2010).

28

facts is taken from the opinion of the Court of Appeal of the State of California, Fifth Appellate District (CCA) affirming the judgment on direct appeal, in <u>People v. Zamora</u>, case number F059292, filed on March 25, 2011.

> In March 2008, Rene Zamora (Zamora), Angel Carrasco (Carrasco) and Derek Romero (Romero) were active Surenos gang members.FN1 Around midnight on March 12, they participated in the fatal shooting of Vincent Chapa (the victim). The victim was not gang-affiliated.

> > FN1. Unless otherwise specified all dates refer to 2008.

> An indictment was returned charging Zamora, Carrasco and Romero with murder (count 1) and discharging a firearm from a motor vehicle at a person (count 2). (Pen.Code, §§ 187, subd. (a), 12034, subd. (c).) FN2 Special circumstances of lying-in-wait murder, drive-by murder, and street gang murder were alleged. (§ 190.2, subd. (a)(15), (21)-(22).) Firearm discharge and street gang allegations were attached to both counts. (§§ 12022.53, subds.(d) & (e)(1), 186.22, subd. (b)(1)(C).)

> > FN2. All further statutory references are to the Penal Code unless otherwise indicated.

> In June 2009, Romero entered into a negotiated plea agreement. It limited Romero's prison exposure to 27 years in exchange for his guilty plea to lesser offenses and truthful testimony at trial of his codefendants.

> Zamora and Carrasco were jointly tried in November 2009. The jury found them guilty on both counts and it found all of the special allegations to be true.

> Zamora and Carrasco were sentenced to life without the possibility of parole, plus a consecutive term of 25 years to life.

> ....

> Zamora argues the trial court erroneously admitted evidence that he attempted to escape from jail while awaiting trial. Also, he contends the trial court failed to instruct on some lesser included offenses to counts 1

4

and 2. Finally, he argues the judgment must be reversed because the verdict forms incorrectly referred to the charging document as an information. None of these arguments is persuasive. We will affirm.

FACTS

I. T.R.'s Testimony.

T.R. testified that he and the victim lived on the north side of Visalia. They spent the evening at the victim's house playing video games. Around 11:00 p.m., they drove to T.R.'s house and T.R. checked in with his mother. T.R. snuck out of the house and the two of them started to walk back to the victim's house.

A van passed them, made a U-turn and came back towards them. They ran into a field and hid by lying down in the tall grass. The driver of the van parked and turned the van's headlights off. About five minutes later, the driver of the van started the vehicle and began to drive northbound.

T.R. said to the victim, "Now is our chance. Let's make a run for your house." They began running towards the victim's house. The victim was overweight and could not run quickly. Although they started out together, the victim soon lagged behind T.R.

The van sped up and headed towards them. T.R. was approximately 15 feet ahead of the victim. T.R. turned around and saw the van slow as it approached the victim. The passenger side of the van was closest to the victim. When the van was alongside the victim, T.R. heard the sound of five gunshots. Then he saw the victim on the ground. The van drove away.

T.R. did not see how many people were inside the van and could not identify any of its occupants. T.R. did not see who was firing the gun. He did not hear anyone in the van say anything.

II. Romero's Testimony.

Romero testified that in 2008 he and Carrasco were members of Vicky's Town (VST). Zamora belonged to a different gang, but associated with VST members.

Romero, Zamora and Carrasco attended a party on the evening of March 11. Zamora brought a gun to the party. He tucked it into the waistband of his pants.

Around 9:00 p.m., they decided to go "tagging." They got into a van. Zamora drove and Carrasco sat in the front passenger seat. Romero sat in the rear passenger seat. Zamora wore black leather gloves. He brought the gun with him.

After tagging a few places, they decided to drive around Visalia to "go catch somebody slipping." This meant they would "go find somebody walking around and see if we can jump them." They drove around for about two hours and did not find anyone to jump. They were about to give up when Carrasco spotted two people close to a grocery store. Zamora drove into the parking lot and made a U-turn so they could catch the two people. The two people ran towards a field across the street and hid in some shrubs. Zamora stopped the van and turned off its lights. They waited for approximately 10 minutes. Eventually, they decided to leave.

As Zamora started to drive away, two people ran out of the bushes. They were both male. One, later identified as the victim, was chubby; the other, later identified as T.R., was skinny. T.R. ran faster than the victim and soon was in front of him. Romero was getting ready to jump out of the van because he thought they were going to jump the two men by "throw[ing] blows." Romero saw a white truck coming towards them so he tried to convince the others to leave. He almost convinced Zamora, but Carrasco said, "No. Drive up close to them." Carrasco said something else to Zamora that Romero did not hear. Then Zamora handed Carrasco the gun. Carrasco placed it on his lap.

Zamora drove the van towards the victim, who was walking now. Zamora slowed the van as it neared the victim. Zamora, Carrasco and Romero all said "South Side. South Side" to the victim because they thought "he was northern" and they wanted to intimidate him. Carrasco asked the victim where he was from. The victim did not respond so Carrasco repeated the question. The victim "mumbled North Side." Carrasco said, "[F]uck that. This is South Side." Carrasco stuck his head and right arm out the front passenger window and fired a shot at the victim. The shot

6

missed the victim. Then Carrasco fired two or three shots at the victim. Romero knew the victim was hit "because he screamed." Then Zamora "peeled out" and drove away.

Zamora and Romero shook Carrasco's hand and congratulated him. They parked for a short time. Carrasco gave the gun to Zamora. Zamora examined the gun to determine if there was any ammunition left because "they wanted to do it again." Zamora was still wearing gloves. They were out of ammunition so they decided to go back to Hanford.

On the way to Hanford, they noticed a patrol car following behind them. Carrasco threw the gun, gloves, bandana and spray paint can out the passenger window. Shortly thereafter, the patrol car pulled the van over and they were all arrested.

About five months after the murder, Romero decided to drop out of the gang. He thought Zamora was planning to kill him.

Romero admitted he wrote poems about gang murders prior to the shooting. He intended to put the poems on his MySpace page to intimidate rival gang members and increase recognition of VST.

The jury was instructed that if it found the charged crimes were committed, then Romero was an accomplice.

III. Other Testimonial and Physical Evidence.

The victim was shot twice in the chest and died at the scene. A lead slug was removed from the victim's body. A criminalist determined it was consistent with a .38-caliber bullet.

A neighbor, F.G., testified he heard "burning of tires on the street" and five gunshots. He looked outside and saw a van speeding away and a person lying on the ground. Another neighbor testified he/she heard at least five gunshots.

T.R. and F.G. were driven by police officers to the location where Zamora's van was stopped. They identified this van as the vehicle they saw.

A can of spray paint, a pair of black leather gloves and a

7

5-shot revolver with a blue bandana wrapped around the handle (the revolver) were found near the area where the van was traveling before it was pulled over. The revolver, which was a Rossi Interarms brand .38-caliber special, contained five spent cartridge casings of various brands.

Carrasco's fingerprints were lifted from the spray paint can. Carrasco's fingerprints were lifted from the van's exterior rear passenger sliding door. Romero's fingerprints were lifted from the exterior hood on the passenger side of the van.

Gunshot residue (GSR) was found on both of Carrasco's and Romero's hands. GSR was not found on either of Zamora's hands. GSR was found on the interior of the van.

Zamora's bedroom was searched. A small bag containing two .38-caliber rounds was found inside a dresser drawer. These bullets were capable of being fired by the revolver.

A photo of Zamora posted on his MySpace page depicted him flashing a gang sign while holding a gun that had its handle wrapped in a blue bandana.

A gang expert testified VST is a fast-growing clique of the Surenos gang. The Surenos' primary activities include homicide and assault with a deadly weapon. In the gang expert's opinion, Carrasco, Zamora and Romero were all active Surenos members on March 12. Neither the victim nor T.R. had any gang affiliations. Based on a hypothetical, a gang expert opined the shooting was committed in furtherance of and for the benefit of a criminal street gang.

IV. The Defense.

Carrasco and Zamora both rested without calling any witnesses.

People v. Zamora, no. F059292, 2011 WL 1088548, at *1-*3 (Mar. 25, 2011).

III.   Verdict and Accusatory Pleading

Petitioner alleges that the verdict returned by the jury was based on a nonexistent accusatory pleading and violated his right to

8

due process and a fair trial protected by the Sixth and Fourteenth Amendments as well as specified provisions of California's constitution.  He also contends that under state law, the verdict is of no effect.  Petitioner bases this claim on the jury's return of verdicts referring to charges in an information, whereas Petitioner was accused by way of a grand jury's indictment.  Although Petitioner concedes that the findings and verdicts actually returned by the jury correspond exactly with the counts and enhancement allegations in the indictment, he nevertheless contends that the verdicts are void.  He contends that the protection against double or former jeopardy provided by the Fifth Amendment shields him from retrial on the charges because after jeopardy attached, the jury was dismissed before reaching a verdict on the actual charges.  (Pet., doc. 1 at 3, 7-16, 69, 74.)

>        A.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings unless
> the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of

the time of the relevant state court decision.  <u>Cullen v. Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  <u>Williams v. Taylor</u>, 529 U.S. at 405-06.  A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner.  <u>Hernandez v. Small</u>, 282 F.3d 1132, 1142 (9th Cir. 2002); see, <u>Williams</u>, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  <u>Williams</u>, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Harrington v. Richter</u>, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable.  <u>Id.</u>  To obtain federal habeas relief, a

10

state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.  Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits based on a

11

factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With respect to each claim raised by a petitioner, the last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  The deferential standard of § 2254(d) applies only to claims the state court resolved on the merits; de novo review applies to claims that have not been adjudicated on the merits.  Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004); Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).

Pursuant to § 2254(d)(2), a habeas petition may be granted only if the state court's conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004).  The court must find that the trial court's factual determination was such that a reasonable fact finder could not have made the finding; that reasonable minds might disagree with the determination or have a basis to question the finding is not sufficient.  Rice v. Collins, 546 U.S. 333, 340-42 (2006).

B.   The State Court's Decision

The California Supreme Court (CSC) denied Petitioner's petition for review of the decision of the CCA on direct appeal that affirmed the judgment.  (Pet., doc. 1, 154.)  The decision of the CCA was thus the last reasoned decision concerning Petitioner's claim.  The

CSC's denial of review was not accompanied by a statement of reasons. Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Accordingly, the Court will look through the decision of the CSC to the decision of the CCA, which in pertinent part is as follows:

> III. Appellate Review of the Alleged Error in the Verdict Forms was Forfeited.
>
> A. Facts.
>
> The accusatory pleading in this case is a true bill of indictment returned by a Tulare County special grand jury. It charged Zamora with first degree murder (count 1) and shooting at an occupied vehicle (count 2).
>
> In relevant part, the verdict form for count 1 read, "We, the Jury, find the defendant Guilty as charged in Count 1 of the Information, of MURDER IN THE FIRST DEGREE, in violation of Penal Code section 187(a), VICTIM VINCENT CHAPA." In relevant part, the verdict for count 2 read, "We, the Jury, find the defendant, Guilty as charged in Count 2 of the Information, of SHOOTING FROM A MOTOR VEHICLE, in violation of Penal Code section 12034(c), victim being VINCENT CHAPA."
>
> During the instructional conference, no one objected to the phrasing of the verdict forms. No one alerted the trial court to the erroneous reference in these verdict forms to an information as the charging document before the jury was discharged.
>
> After conclusion of evidence, the trial court instructed the jury that Zamora was "charged in Count 1 with murder." It instructed the jury on the elements of first degree murder, second degree murder and manslaughter. Then the court told the jury that it would "be given verdict forms for guilty and not guilty of first degree murder, second degree murder and voluntary manslaughter." The jury was further instructed, "In Count 2, the defendant is charged with shooting from a motor vehicle at another person in

violation of Penal Code Section 12034." Then it instructed on the elements of this crime.

B. Failure to object to the wording of the verdict forms forfeited appellate review of the erroneous references to an indictment.

Zamora argues the verdicts are void "because they are verdicts for charges and allegations in a nonexistent accusatory pleading," and since he was "found guilty and sentenced based on charges in a nonexistent information," he was denied his right to due process of law and to a jury trial under the state and federal constitutions and unspecified California statutes. Respondent contends Zamora forfeited appellate consideration of this point because he did not object on this ground below. We agree with respondent.

An objection to jury verdict forms is generally deemed waived if not raised in the trial court. [Citations.]" (*People v. Toro* (1989) 47 Cal.3d 966, 976, fn. 6.) Failure to interpose a timely objection to an alleged defect in the verdict "precludes consideration of appellate challenge thereto. [Citations.]" (*People v. Lewis* (1983) 147 Cal.App.3d 1135, 1142.) When there is an unmistakable intent to convict, a defect in the form of the verdict is disregarded as immaterial absent objection by the defendant in the trial court. (*People v. Radil* (1977) 76 Cal.App.3d 702, 710.)

In *People v. Webster* (1991) 54 Cal.3d 411 (*Webster*), the defendant argued the verdicts finding him guilty of murder were "were neither general nor special, and were thus unauthorized." (*Id.* at p. 446.) Our Supreme Court found "the point was waived by defendant's persistent failure to object or seek corrective measures below. We reject it for that reason alone." (*Ibid.*) Then it explained, "[i]n any event, technical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice. [Citations.]" (*Id.* at p. 447.) It cited section 1404 which provides, "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial

14

right." The high court reasoned the jury's intent to convict the defendant of first degree murder was conclusively shown. The defendant's substantial rights were not affected by the alleged defect in the verdicts and he did not suffer any cognizable prejudice. "[A]n undifferentiated verdict would not have changed the appellate outcome." (*Webster, supra*, at p. 447.)

Following and applying *Webster*, we likewise conclude Zamora's challenge to the erroneous reference to an information as the charging document in the verdict forms was forfeited by the absence of objection below. If Zamora had objected to this error either when the verdict forms were discussed during the instructional conference or when the verdicts were read out loud in open court, the trial court easily could have corrected the error. Zamora's attempt to characterize this defect in the verdicts as judicial error is unconvincing. This was merely a clerical error in naming the type of accusatory pleading. The mistake is not transformed into judicial error simply because the court discharged the jury. By failing to object at any time below, Zamora forfeited appellate consideration of the defect. (*Webster, supra*, 54 Cal.3d at pp. 446-447.)

In any event, Zamora's due process rights were not affected by the error in the verdict forms. Zamora was provided with legally adequate notice of the charges against him and given a full and fair opportunity to defend against those charges. The jury was correctly instructed on the charges contained in the indictment and his guilt or innocence on those charges was determined by the jury. The offenses and enhancements decided by the jury in its verdicts were identical to the charges and enhancements contained in the indictment. None of Zamora's substantial rights were affected by the misidentification of the charging document as an information instead of an indictment. The jury's intent to convict Zamora of first degree murder and shooting from a motor vehicle was unmistakably clear. The verdicts express with reasonable certainty findings that are fully supported by the evidence. The error did not prejudice Zamora in any way. Therefore, the technical defect in the verdicts may be disregarded and the judgment upheld. (*Webster, supra*, 54 Cal.3d at pp. 446-447; see also, e.g., *People v. Radil, supra*, 76 Cal.App.3d at pp. 709-710; *People v. Jones* (1997) 58 Cal.App.4th 693, 710-711; *People v. Allen* (1985)

165 Cal.App.3d 616, 627-628; *People v. Sheik* (1925) 75 Cal.App. 421, 425-426.)

People v. Zamora, 2011 WL 1088548, at *8-*9.

C.   State Law Claims

Petitioner's contention that he has a right to relief for alleged violations of California's constitution or other provisions of state law lacks merit.  Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 131 S.Ct. at 16; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).  This Court accepts a state court's interpretation of state law, Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996), and it is bound by the California Supreme Court's interpretation of California law unless it is determined that the interpretation is untenable or a veiled attempt to avoid review of federal questions, Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication that the state court's interpretation of state law was an attempt to avoid review of federal questions.  Thus, this Court is bound by the state court's interpretation and application of state law, including its rulings

16

on the legal effect of the error in the verdicts and of Petitioner's
failure to raise the issue before discharge of the jury.

### D.   Due Process and Right to Trial by Jury

Although Respondent alleges that review of Petitioner's due
process claim may be foreclosed because of Petitioner's procedural
default in state court,[2] Respondent nevertheless addresses the
merits of Petitioner's claim.  In a habeas case, it is not necessary
that the issue of procedural bar be resolved if another issue is
capable of being resolved against the petitioner.  Lambrix v.
Singletary, 520 U.S. 518, 525 (1997).  Likewise, the procedural
default issue, which may necessitate determinations concerning cause
and miscarriage of justice, may be more complex than the underlying
issues in the case.  In such circumstances, it may make more sense
to proceed to the merits.  See Franklin v. Johnson, 290 F.3d 1223,
1232 (9th Cir. 2002).

Here, to avoid a lengthier analysis and to facilitate
determination of related claims regarding ineffective assistance of
counsel (IAC), the Court will proceed to the merits of Petitioner's
claim.

---

[2] The doctrine of procedural default is a specific application of the more general
doctrine of independent state grounds.  It provides that when state court decision
on a claim rests on a prisoner's violation of either a state procedural rule that
bars adjudication of the case on the merits or a state substantive rule that is
dispositive of the case, and the state law ground is independent of the federal
question and adequate to support the judgment such that direct review in the
United States Supreme Court would be barred, then the prisoner may not raise the
claim in federal habeas absent a showing of cause and prejudice or that a failure
to consider the claim will result in a fundamental miscarriage of justice.  Walker
v. Martin, - U.S. -, 131 S.Ct. 1120, 1127 (2011); Coleman v. Thompson, 501 U.S.
722, 729-30 (1991); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003); Wells
v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994). The doctrine applies regardless of
whether the default occurred at trial, on appeal, or on state collateral review.
Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

17

1    To the extent that Petitioner's objection is based on the state

2 court's conclusion that the verdict was valid because Petitioner

3 forfeited his claim, this Court is bound by the state court's

4 decision as to the legal effect of the verdict.

5    To the extent that Petitioner contends that the verdict

6 procedures constituted a denial of Petitioner's right to a jury

7 trial, the Sixth Amendment of the U.S. Constitution provides that

8 "[i]n all criminal prosecutions, the accused shall enjoy the right

9 to a speedy and public trial, by an impartial jury...." U.S. Const.

10 amend. VI. This includes, as its "most important element," the

11 "right to have the jury, rather than the judge, reach the requisite

12 finding of 'guilty.'" Sullivan v. Louisiana, 508 U.S. 275, 277

13 (1993). However, a trial court may correct clerical and inadvertent

14 errors in a verdict form to reflect the jury's true intent even

15 after the jury has been discharged. See, e.g., United States v.

16 Stauffer, 922 F.2d 508, 513-14 (9th Cir. 1990) (holding on direct

17 criminal appeal that the trial court's correction of a jury verdict

18 from acquittal to guilty to correct clerical error and reflect the

19 jury's true intent did not violate the Double Jeopardy Clause); Fed.

20 R. Crim. P. 36 (allowing courts to correct clerical errors in a

21 judgment at any time after giving notice); Moorehead v. Cate, no. CV

22 11-5879-JHN (JPR), 2011 WL 7416510, at *5-*7 (C.D.Cal., Dec. 13,

23 2011) (finding no violation of a state prisoner's right to jury

24 trial where the petitioner was sentenced to an offense charged and

25 argued to the jury but mistakenly described in the verdict); Camacho

26 v. Rosa, no. 09-5527-RSWL(RZ), 2010 WL 3952873, at *2-3 (C.D.Cal.

27 Aug. 18, 2010) (rejecting a state prisoner's claim that he suffered

28 due process and double jeopardy violations from the trial court's

18

error of giving the wrong verdict form to the jury on one count
where the jury's true intent was clear, both counsel and the judge
referred to the correct count throughout trial, and the jury was
properly instructed).  There is no clearly established Supreme Court
precedent that formal errors on a verdict form invalidate a
conviction or sentence because of inconsistency with the charging
document where the jury instructions and argument were correct, and
the jury's intention was clearly expressed.  Cf. Goines, 2009 WL
4048601 at *6, *11.

Petitioner acknowledges the existence of the indictment that
charged the precise offenses that were considered by the jury and
were the subject of the jury's verdicts.  Thus, to the extent that
Petitioner's claim is based on the right to have a jury determine
guilt of each element of the charge beyond a reasonable doubt,
Petitioner has not shown how any element was withdrawn from the
jury's consideration.

Insofar as Petitioner bases his right to relief on a
generalized right to due process of law, Petitioner concedes that
the verdicts match the substantive charges and enhancement
allegations in the indictment.  Petitioner does not challenge the
objective reasonableness of the state court's decision that
Petitioner was provided with legally adequate notice of the charges
against him, was given a full and fair opportunity to defend against
those charges, had the benefit of correct jury instructions on the
charges in the indictment (except as to lesser included offenses, as
discussed below), and was found guilty after the jury determined his
guilt on the charges.  The record supports the state court's
findings that none of Petitioner's substantial rights were affected

by the misidentification of the charging document as an information instead of an indictment, and that the jury's intent to convict Petitioner of first degree murder and shooting from a motor vehicle was unmistakably clear.

The Court, therefore, concludes that Petitioner suffered no prejudice.  In a proceeding pursuant to § 2254(d), constitutional errors in a state court criminal trial are evaluated under the standard of Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) -- whether the error had a substantial and injurious effect or influence in determining the jury verdict.  Frye v. Pliler, 551 U.S. 112, 121-22 (2007).  Here, the jury was correctly instructed on the charges and enhancements, and there was no evidence of jury confusion.  Petitioner has failed to demonstrate that the erroneous reference to an information instead of an indictment on the verdict form had a substantial and injurious effect or influence in determining the jury's verdict.  Brecht, 507 U.S. at 637.  Because the verdicts of conviction were valid, Petitioner's claim that the judgment violated the protection against Double Jeopardy is also without merit.

Accordingly, it will be recommended that Petitioner's claim or claims concerning the erroneous verdict form be denied.

IV.   Failure to Instruct on Voluntary Manslaughter

Petitioner argues that with respect to the murder charge, he was denied his right to due process of law guaranteed by the Fourteenth Amendment by the trial court's failure to instruct on its own motion on the lesser included offense of involuntary manslaughter.  Petitioner contends there was substantial evidence supporting a defense of Petitioner's having committed only

20

misdemeanor manslaughter based on the group's stated purpose of merely injuring (as distinct from killing) persons that evening, Carrasco's having only brandished a weapon by shooting out the window to intimidate the victims, and Petitioner's limited knowledge and understanding of the type of misconduct planned as being to inflict merely non-fatal injuries.  (Pet., doc. 1 at 3, 17-34.)

The CCA issued a reasoned decision on this claim in the direct appeal, and the CSC denied review summarily.  (Pet., doc. 1, 154.) Petitioner raised the same claim in a habeas corpus petition filed in the CSC, citing to the state court appellate record in support; the CSC summarily denied the petition.  (LD 12, LD 18-19.) Accordingly, the Court will review the CCA's decision as the last reasoned decision.

> ### A.   The State Court's Decision

The decision of the CCA is as follows:

> II. Zamora was not Prejudiced by the Failure to Instruct on Involuntary Manslaughter as a Lesser Included Offense to Count 1 or Discharging a Firearm from a Motor Vehicle as a Lesser Included Offense to Count 2.
>
> Next, Zamora argues the court erred by failing to instruct, with respect to count 1, on the lesser offense of misdemeanor involuntary manslaughter based on the crime of brandishing a firearm under section 417, subdivision (a)(2), or the crime of being a driver who knowingly allows a person to bring a firearm into a motor vehicle under section 12034, subdivision (a). He also argues the court erred by failing to instruct, with respect to count 2, on the lesser offense of discharging a firearm from a motor vehicle under section 12034, subdivision (c). As we will explain, these claims fail because Zamora was not prejudiced by the absence of instruction on these lesser offenses.
>
> A. The trial court has a *sua sponte* obligation to instruct on all lesser included offenses when there is substantial evidence supporting the instruction.

21

A trial court has a *sua sponte* obligation to instruct on all lesser included offenses "when there is substantial evidence to support the instruction, regardless of the theories of the case proffered by the parties." (*People v. Barton* (1995) 12 Cal.4th 186, 203.) Substantial evidence is evidence from which reasonable jurors could conclude the lesser offense, but not the greater offense, was committed. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.) " 'In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury.' [Citation.]" (*Id.* at p. 585.) " 'Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused.' [Citations .]" (*People v. Flannel* (1979) 25 Cal.3d 668, 685.)

As will be explained, we need not decide whether the trial court erred by failing to instruct on involuntary manslaughter or shooting at a motor vehicle because the verdicts establish the jury determined Zamora personally possessed the intent to kill and it is not reasonably probable that more favorable verdicts would have been returned if the jury and been instructed on these lesser crimes. (*People v. Polley* (1983) 147 Cal.App.3d 1088, 1092 (*Polley*).)

B. Failure to instruct on the identified lesser included offenses is harmless.

"[I]n a noncapital case, error in failing *sua sponte* to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818]. A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred [citation]." (*People v. Breverman* (1998) 19 Cal.4th 142, 178, fn. omitted.) In assessing prejudice, we examine "the entire record, including the evidence, to determine whether it was reasonably probable the error affected the outcome." (*Ibid.*) There is also a line of authority holding error in instructing the jury concerning lesser forms of culpability is harmless when it can be

shown that the jury properly resolved the question under the instructions, as given. (*People v. Hart* (2009) 176 Cal.App.4th 662, 673-674; *People v. Sedeno* (1974) 10 Cal.3d 703, 721; *Polley, supra*, 147 Cal.App.3d at pp. 1091-1092.) When the jury finds the defendant guilty of first degree murder, this verdict necessarily reflects a determination of defendant's intent. (*Polley, supra*, 147 Cal.App.3d at pp. 1091-1092; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 21-22.)

*Polley* is instructive. There, the defendant was convicted of first degree murder and burglary; a firearm allegation was found true. In relevant part, the defendant argued the trial court erred by refusing to instruct on involuntary manslaughter based on a brandishing theory. The appellate court concluded that it "need not decide whether either of those two theories is valid, because the verdict shows the jury rejected the first prerequisite to an involuntary manslaughter verdict: the absence of malice. Any error in the failure to give the involuntary manslaughter instruction, therefore, was harmless." (*Polley, supra*, 147 Cal.App.3d at p. 1091.) It reasoned, "[T]he jury was instructed on second degree murder and voluntary manslaughter as well as first degree murder and was correctly told the role malice plays in the definitions of those crimes. The first degree murder verdict, therefore, shows the jury found Polley acted with malice; any error in not giving the involuntary manslaughter instruction was harmless." (*Id.* at p. 1092.) Here, as in *Polley*, the jury was instructed on first and second degree murder and voluntary manslaughter. The questions whether the killing was intentional, accidental, or the product of the negligent use of a firearm, were necessarily resolved adverse to Zamora by the jury's first degree murder verdict. (*Polley, supra*, 147 Cal.App.3d at pp. 1091-1092; *People v. DeJesus, supra*, 38 Cal.App.4th at p. 21.)

Zamora argues the jury was not given the opportunity to find him guilty of crimes that do not involve malice or intent to kill. This contention fails because the jury was presented with three special circumstance allegations and it found all of them true. The jury was instructed that it could not find a special circumstance allegation true for a defendant who was not the actual killer unless the People proved beyond a reasonable doubt that he possessed the intent to kill. (CALCRIM No. 702.) In relevant part, CALCRIM No. 702 provided: "In order to prove this special

23

circumstance for a defendant who is not the actual killer
but who is guilty of first degree murder as an aider and
abettor, the People must prove that the defendant acted
with the intent to kill." Thus, in finding the special
circumstances allegations true, the jury necessarily
resolved the factual question of Zamora's mens rea (i.e.,
his intent to kill) adverse to him. Under the instructions
given to it, the jury could not have found the special
allegations true as to Zamora if it did not believe he
personally possessed the intent to kill. If the jurors had
been persuaded by defense counsel's argument that Romero
was the shooter or his argument Zamora did not know
Carrasco was going to shoot at the victim, the jurors
would not have unanimously found all of the special
circumstances true.

Additionally, we agree with respondent that the evidence
in this case so strongly proves Zamora's guilt of all of
the charged offenses and special allegations that the
omission of instruction on the identified lesser included
offenses was harmless. The evidence amply supports the
jury's finding that Zamora personally possessed an intent
to kill. The murder weapon was linked to Zamora through a
MySpace photo depicting him holding a revolver with a
handle wrapped in a blue bandanna and .38-caliber bullets
found in Zamora's bedroom. No evidence was presented
directly linking a gun or bullets to either Carrasco or
Romero. No evidence was presented contradicting Romero's
testimony that Zamora brought the gun to the party and had
it with him when they drove around looking for someone "to
jump." Romero testified Zamora handed the gun to Carrasco,
who fired two or three shots directly at the victim. It
can reasonably be inferred from Romero's testimony that
the gun was loaded when Zamora handed it to Carrasco.
Zamora did not demonstrate any surprise or dismay that
Carrasco shot the victim. Instead, Romero testified that
after the shooting, he and Zamora congratulated Carrasco
and shook his hand. Romero also testified that Zamora and
Carrasco wanted to shoot someone else but did not have
enough ammunition.

Zamora argues Romero was not a credible witness. By
finding all counts and special allegations true as to both
defendants, the jury demonstrated that they found Romero
believable. We find no basis to overturn this credibility
determination. Apart from the discrepancy between Romero's
testimony that Carrasco fired two or three shots when the

24

revolver had five spent cartridges in it and neighbors heard five shots, Romero's testimony is largely consistent with the other evidence.

For these reasons, we hold the absence of instruction on involuntary manslaughter and discharging a firearm from a motor vehicle did not affect the verdicts and is harmless under the *Watson* FN3 standard of prejudice. (*Polley, supra*, 147 Cal.App.3d at pp. 1091–1092.) We find the evidence of Zamora's guilt to be compelling and, therefore, further find the instructional omissions to be harmless under the stringent *Chapman* standard of harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

    FN3. *People v. Watson, supra*, 46 Cal.2d 818.

People v. Zamora, 2011 WL 1088548, at *5-*8.

        B.   State Law Claims

    To the extent Petitioner alleges the instructional claim violated state law, Petitioner's claim is not cognizable in this proceeding.  The Supreme Court has held that a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  Estelle v. McGuire, 502 U.S. at 71-72.  A claim that an instruction was deficient in comparison to a state model or that a trial judge incorrectly interpreted or applied state law governing jury instructions does not entitle one to relief under § 2254, which requires violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3).

    Accordingly, to the extent that Petitioner raises state law claims, his claims should be dismissed.

///

C.   Due Process

Although the Supreme Court has held that the failure to instruct on lesser included offenses can constitute constitutional error in capital cases, Beck v. Alabama, 447 U.S. 625 (1980), it has reserved decision on whether such an omission in non-capital cases constitutes constitutional error, id. at 638 n.7.  When the Supreme Court has expressly reserved consideration of an issue, there is no Supreme Court precedent creating clearly established federal law relating to a petitioner's habeas claim.  Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006).  Therefore, a petitioner cannot rely on circuit authority, and there is no basis for relief pursuant to § 2254(d)(1) for an unreasonable application of clearly established federal law.  Alberni v. McDaniel, 458 F.3d at 864; Brewer v. Hall, 378 F.3d 952, 955-57 (9th Cir. 2004).

Accordingly, there is no clearly established federal law within the meaning of § 2254(d) concerning a state court's rejection of a claim that Sixth and Fourteenth Amendment rights in a non-capital case were violated by a failure to instruct on a lesser included offense.  Thus, such a claim is not cognizable in a proceeding pursuant to 28 U.S.C. § 2254 and is subject to dismissal.  Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998).

Further, the absence of the instruction did not result in any fundamental unfairness.  The only basis for federal collateral relief for instructional error is that an infirm instruction or the

26

lack of instruction by itself so infected the entire trial that the resulting conviction violates due process.  Estelle v. McGuire, 502 U.S. at 71-72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (it must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment).  The Court in Estelle emphasized that the Court had very narrowly defined the category of infractions that violate fundamental fairness, and that beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.  502 U.S. at at 72-73.

The Supreme Court has held that harmless error analysis applies to instructional errors as long as the error at issue does not categorically vitiate all the jury's findings.  Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting in turn Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous reasonable doubt instructions as constituting structural error)).  In Hedgpeth v. Pulido, the Court cited its previous decisions that various forms of instructional error were trial errors subject to harmless error analysis, including errors of omitting or misstating an element of the offense or erroneously shifting the burden of proof as to an element. Hedgpeth, 555 U.S. 60-61.  To determine whether a petitioner proceeding pursuant to § 2254 suffered prejudice from an instructional error, a federal court must determine whether the petitioner suffered actual prejudice by assessing whether, in light of the record as a whole, the error had a substantial and injurious

effect or influence in determining the jury's verdict.  Hedgpeth, 555 U.S. at 62; Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).

Here, the state court proceeded to determine whether Petitioner had suffered any prejudice from the omission of the instruction. The jury was instructed regarding special circumstances with CALCRIM 702, which required a finding that any person guilty of first degree murder as an aider and abettor have the specific intent to kill. The jury's finding that Petitioner had the specific intent to kill demonstrates that the omission of the instruction did not have a substantial and injurious effect or influence in determining the jury's verdict because the jury had independently determined that Petitioner individually had the intent to kill.

Under the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause and Confrontation Clause of the Sixth Amendment, criminal defendants must be afforded a meaningful opportunity to present a complete defense.  Crane v. Kentucky, 476 U.S. 683, 690 (1986); California v. Trombetta, 467 U.S. 479, 485 (1984).  The Supreme Court has not recognized a generalized constitutional right to have a jury instructed on a defense available under state law.  See Gilmore v. Taylor, 108 U.S. 333, 343 (1993).  However, when habeas is sought under 28 U.S.C. § 2254, a failure to instruct on the defense theory of the case constitutes error if the theory is legally sound and evidence in the case makes it applicable.  Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006); see Mathews v. United States, 485 U.S. 58, 63 (1988) (reversing a conviction and holding that even if a defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury

28

could find entrapment, and the defendant requests such an instruction).

However, a failure to instruct on a defense theory is harmless under the Brecht standard where other instructions permitted consideration of the pertinent defensive matter. Beardslee v. Woodford, 358 F.3d 560, 576 (9th Cir. 2004) (failure to instruct on manslaughter was not error and was harmless because it had no substantial or injurious effect or influence in determining the jury's verdict where numerous instructions allowed the jury to consider the effect of threats upon the accused's mental state, both as an absolute defense to all charges and as a factor in choosing between first and second degree murder; the jury had been given more than the simple all or nothing choice at issue in Beck v. Alabama, 447 U.S. 625, 638-46; and the jury's decision to reject second degree murder meant that they would not have accepted the lesser charge of manslaughter). Such a determination is appropriate here, where the jury clearly expressed a finding that Petitioner personally harbored the intent to kill, and where the evidence of Petitioner's intent to kill was strong. The jury accepted this evidence.

Petitioner has not shown that he suffered any fundamental unfairness or that the omission had any substantial or injurious effect or influence in determining the jury's verdict. Accordingly, it will be recommended that the Court deny Petitioner's claim concerning the failure to instruct on the lesser included offense of involuntary manslaughter.

///

V.   Failure to Instruct on the Lesser Included Offense of Shooting from a Vehicle

Petitioner alleges that the trial court committed an error under state law and denied Petitioner his right to due process of law when with respect to count two, maliciously discharging a firearm at a person from a motor vehicle, it failed to instruct *sua sponte* on the lesser included offense of discharging a firearm from a motor vehicle.  (Pet., doc. 1 at 3, 26-39.)

A.   The State Court's Decision

The last reasoned decision is the decision of the CCA, in which the court considered Petitioner's two grounds of omitted instructions on lesser included offenses together.  The CCA again proceeded directly to consider the presence or absence of prejudice that resulted from the omitted instruction:

> [Petitioner] also argues the court erred by failing to instruct, with respect to count 2, on the lesser offense of discharging a firearm from a motor vehicle under section 12034, subdivision (c). As we will explain, these claims fail because Zamora was not prejudiced by the absence of instruction on these lesser offenses.

People v. Zamora, 2011 WL 1088548, at *6.

B.   Analysis

To the extent that Petitioner relies on state law, Petitioner fails to state a cognizable claim.

With respect to a due process claim, there is no clearly established federal law that required the state court to instruct on the lesser offense.  In view of the jury's finding that Petitioner

30

personally harbored the intent to kill, any failure to instruct on
the lesser offense of simply and non-maliciously shooting out of a
vehicle was also harmless.  Accordingly, it will be recommended that
Petitioner's due process claim based on failure to instruct on
simple shooting out of a vehicle be denied.

VI.  Admission of Evidence of Escape and Related Claim of
     Ineffective Assistance of Counsel

Petitioner alleges that the trial court abused its discretion
and committed error under state law, and violated Petitioner's right
to due process of law protected by the Fourteenth Amendment, when it
admitted evidence that Petitioner had attempted to escape from a
jail facility approximately nine months after his arrest, including
notes in which he wrote he had unsuccessfully attempted to escape,
had no reason not to try, and had nothing to lose.  Petitioner
contends the evidence was ambiguous and remote, irrelevant, and so
prejudicial that it should have been excluded under state law.  Its
admission was also unfair because Petitioner has a liberty interest
in the correct application of state law.  Petitioner argues the
evidence did not reflect consciousness of guilt and functioned as
evidence of Petitioner's having committed another crime, which
raised a risk that the finder of fact would infer that Petitioner
therefore was more likely to have committed the charged murder.
(Pet., doc. 1, at 3, 40-47.)

Alternatively, Petitioner argues that if counsel failed to
preserve his due process claim by failing to lodge an objection, he
suffered a violation of his right to the effective assistance of
counsel protected by California law and the Sixth and Fourteenth
Amendments.  (Pet, doc. 1, 47-50.)

31

A. <u>The State Court' Decision</u>

The last reasoned decision was the opinion of the CCA on direct appeal.  The decision of the CCA is as follows:

I. Evidence of Zamora's Attempted Escape was Properly Admitted.

A. Facts.

During motions in limine, the People sought to introduce evidence that Zamora attempted to escape from jail on December 24, and subsequently wrote a note referencing the escape attempt. Defense counsel objected, arguing that the attempted escape was "too far removed," and neither the escape attempt nor the contents of the note necessarily evidenced a consciousness of guilt. Defense counsel also contended the note was vague and its contents did not necessarily relate to the escape attempt. Finally, he asserted, "[i]t's too broad and prejudicial as well." The court found this evidence was admissible "under the theory of consciousness of guilt." It concluded the probative value of the evidence outweighed its prejudicial effect.

A correctional officer at the Bob Wiley Detention Facility testified on December 24, he saw Zamora lying on the floor underneath the bunk bed. Zamora's cellmate was asleep. Zamora told the officer that he was cleaning the floor. The cell was searched. A hole had been dug in the cell wall about six inches above the floor. A piece that goes along the side of the air vent was found in the cell. Zamora said he did not know how the hole got into the wall. Zamora was moved to a single-person cell. On December 30, Zamora's cell was searched. Officers found a handwritten note and a replica of a small metal wall plate made out of soap and another substance to color it brown. In relevant part, the note read: "But I was on a little mission to escape but I didn't make it too far. But this fool ain't got shit to lose so I had to give it a try."

The jury was instructed on flight with CALCRIM No. 372.

B. Admission of this evidence was not an abuse of discretion and did not infringe Zamora's federal constitutional due process right.

Zamora argues testimony about his attempted escape was

32

irrelevant and should have been excluded under Evidence Code section 352. We are not convinced. "We apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352. [Citation.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1125–1126 (*Kipp*).) Applying this standard, we discern no abuse of discretion in the ruling admitting evidence of Zamora's attempted escape.

"Evidence is relevant if it has 'any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' [Citations.]" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1058.) In assessing relevance, the test " ' "is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' " ' [Citation.]" (*Ibid.)*

Evidence of an attempt or plan to escape from jail pending trial ordinarily is relevant to establish consciousness of guilt. (*Kipp, supra*, 26 Cal.4th at p. 1126; *People v. Terry* (1970) 2 Cal.3d 362, 395 (*Terry*).) Zamora argues this general rule is not applicable because his escape attempt occurred several months after his arrest. This contention was rejected by our Supreme Court in *Terry, supra*, 2 Cal.3d 362. In *Terry*, the high court explained that while it is possible a person who has been incarcerated for several months escapes because he cannot bear further incarceration, "it is also probable that only one who expects his guilt to be proved at trial will attempt an escape and that an innocent man will stay for trial in order to clear his name and win lawful liberty." (*Id.* at p. 395, fn. omitted.) Further, "the question of time of escape goes to the weight to be given evidence of escape pending trial, not to its admissibility." (*Ibid.*) Thus, the timing of Zamora's attempted escape went to the weight of the evidence and not its admissibility. (*Ibid.; Kipp, supra*, 26 Cal.4th at pp. 1126–1127.)

We agree with the trial court that the probative value of this evidence was not substantially outweighed by concerns of undue consumption of time or risk of unfair prejudice. Testimony about the escape "was brief and matter of fact." (*People v. Wallace, supra*, 44 Cal.4th at p. 1059.) The escape attempt did not involve any overt violence. (*Kipp, supra*, 26 Cal.4th at p. 1126.) The circumstances surrounding the victim's murder are so senselessly

horrific that the escape attempt pales in comparison to the charged offenses. The jurors were not likely to be shocked or impassioned by the escape attempt or contents of Zamora's handwritten note. "The trial court could reasonably conclude, in the exercise of its broad discretion, that this evidence would not so inflame the jurors' emotions as to interfere with their fair and dispassionate assessment of the evidence of defendant's guilt." (*Ibid.*) Therefore, we conclude the trial court did not abuse its discretion in admitting evidence of Zamora's escape. (*Kipp, supra,* 26 Cal.4th at pp. 1125–1127 [evidence of escape attempt while defendant was under judgment of death for murder was properly admitted]; *Terry, supra*, 2 Cal.3d at p. 395 [evidence of escape several months after arrest on two counts of murder properly admitted].)

Zamora also argues evidence of his attempted escape was so unfairly prejudicial that its admission violated his federal constitutional due process right and his trial counsel was ineffective because he did not object on this basis. We are not persuaded.

Although defense counsel did not object on due process grounds, the due process argument presented by Zamora on appeal is cognizable. To consider on appeal an argument that admission of evidence, which was disputed on Evidence Code section 352 grounds at trial, was an error so serious that it violates due process " 'entails no unfairness to the parties,' who had the full opportunity at trial to litigate whether the court should overrule or sustain the trial objection. [Citation.]" (*People v. Partida* (2005) 37 Cal.4th 428, 436 (*Partida*); *People v. Yeoman* (2003) 31 Cal.4th 93, 118.)

Admission of disputed evidence violates a defendant's federal constitutional due process right only if it rendered the trial fundamentally unfair. (*Partida, supra*, 37 Cal.4th at p. 436.) In view of our determination that evidence of the attempted escape was relevant to show consciousness of guilt and was not excessively prejudicial, we further conclude that admission of this evidence did not render the trial unfair. Therefore, Zamora's due process right was not infringed. (*People v. Burgener* (2003) 29 Cal.4th 833, 872–873.) Since an objection on this ground would not have been successful, Zamora's defense counsel was not ineffective because he

1   did not object on this basis. (*Ibid.*)

2   People v. Zamora, 2011 WL 1088548, at *3-*5.

3           B.   State Law Evidentiary Rulings

4       Because federal habeas relief is available to state prisoners

5   only to correct violations of the United States Constitution,

6   federal laws, or treaties of the United States, federal habeas

7   relief is not available to retry a state issue that does not rise to

8   the level of a federal constitutional violation.  28 U.S.C.

9

10  § 2254(a); Wilson v. Corcoran, 131 S.Ct. at 16; Estelle v. McGuire,

11  502 U.S. at 67-68.  A federal court reviewing a habeas petition

12  pursuant to 28 U.S.C. § 2254 has no authority to review alleged

13  violations of a state's evidentiary rules.  Jammal v. Van de Kamp,

14  926 F.2d 918, 919 (9th Cir. 1991).  The primary federal safeguards

15  applicable to relevant evidence are provided by the Sixth

16  Amendment's rights to counsel, compulsory process to obtain defense

17  witnesses, and confrontation and cross-examination of prosecution

18  witnesses; otherwise, admission of evidence in state trials is

19  ordinarily governed by state law.  Perry v. New Hampshire, - U.S. -,

20  132 S.Ct. 716, 723 (2012) (Due Process Clause does not require a

21  trial judge to conduct a preliminary assessment of the reliability

22  of an eyewitness identification made under suggestive circumstances

23  not arranged by the police).  The reliability of relevant testimony

24  typically falls within the province of the jury to determine.  Id.

25  at 728-29.  Absent improper police conduct or other state action, it

26

27

28

is sufficient to test the reliability of evidence through the normal procedures, including the right to counsel and cross-examination, protective rules of evidence, the requirement of proof of guilt beyond a reasonable  doubt, and jury instructions.   Id.

Here, there is no indication that the state court's evidentiary rulings were associated with an attempt to avoid federal question review.   Accordingly, this Court is bound by the California court's application of state evidentiary law, including its determination that the evidence was relevant and admissible under the California Evidence Code.   Any claim of misapplication or misinterpretation of state evidentiary law is subject to dismissal because it is not a cognizable basis for relief in this proceeding.

C.   <u>Federal Due Process Limitations on the Admission of Evidence</u>

With respect to Petitioner's claim that the admission of the evidence of his escape was fundamentally unfair, the introduction of evidence alleged to be prejudicial violates the Due Process Clause if the evidence was so arbitrary or prejudicial that its admission rendered the trial fundamentally unfair and violated fundamental conceptions of justice.   <u>Perry v. New Hampshire</u>, 132 S.Ct. at 723; <u>Estelle v. McGuire</u>, 502 U.S. at 67-69; <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009).

Further, where a state court has rendered a decision on a federal claim, under the AEDPA even the clearly erroneous admission

of evidence that renders a trial fundamentally unfair may not permit the grant of habeas relief unless forbidden by clearly established federal law as established by the Supreme Court.  Holley v. Yarborough, 568 F.3d at 1101.  The Supreme Court has not yet held that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.  See Estelle, 502 U.S. at 75 n.5.  Absent such clearly established federal law, it cannot be concluded that a state court's ruling was contrary to or an unreasonable application of Supreme Court precedent under the AEDPA.  Holley, 568 F.3d at 1101 (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)); see also Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006) (denying a due process claim concerning the use of propensity evidence for want of a "clearly established" rule from the Supreme Court); Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008).

Admission of evidence violates due process only if there are no permissible inferences that a jury may draw from it, and the evidence is of such quality as necessarily prevents a fair trial. Boyde v. Brown, 404 F.3d 1159, 1172-73 (9th Cir. 2005) (quoting Jammal v. Van de Kamp, 926 F.2d at 920).  To the extent the CCA decided the federal due process issue, there is no clear Supreme Court holding that introduction of analogous evidence violates due process and requires habeas relief.

///

1   Considering more generally whether Petitioner's due process

2   right to a fair trial was violated by admission of the evidence of

3   Petitioner's escape, the evidence was relevant because one inference

4   was a consciousness of guilt, which tended to show Petitioner's

5   culpability of the charged offenses.  The conduct and statements

6   associated with the escape attempt were not unduly provocative,

7   gruesome, or otherwise inflammatory, and they were arguably less

8   serious than the charged offenses.

9   Under the circumstances, the state court's determination that

10  admission of the evidence was not fundamentally unfair was not

11  contrary to, or an unreasonable application of clearly established

12  federal law.  Accordingly, it will be recommended that the Court

13  deny Petitioner's due process claim concerning admission of evidence

14  of his escape.

15  D.  Ineffective Assistance of Counsel

16  With respect to Petitioner's claim that failure to exclude the

17  evidence was ineffective assistance of counsel, the law governing

18  claims concerning ineffective assistance of counsel is clearly

19  established for the purposes of the AEDPA deference standard set

20  forth in 28 U.S.C. § 2254(d).  Premo v. Moore, 131 S.Ct. 733, 737-38

21  (2011); Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

22  To demonstrate ineffective assistance of counsel in violation

23  of the Sixth and Fourteenth Amendments, a convicted defendant must

24  show that 1) counsel's representation fell below an objective

25  standard of reasonableness under prevailing professional norms in

26  light of all the circumstances of the particular case; and 2) unless

27  prejudice is presumed, it is reasonably probable that, but for

28  counsel's errors, the result of the proceeding would have been

38

different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984);
Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  A petitioner must
identify the acts or omissions of counsel that are alleged to have
been deficient. Strickland, 466 U.S. 690.  This standard is the same
standard that is applied on direct appeal and in a motion for a new
trial.  Strickland, 466 U.S. 697-98.

In determining whether counsel's conduct was deficient, a court
should consider the overall performance of counsel from the
perspective of counsel at the time of the representation.
Strickland, 466 U.S. at 689.  There is a strong presumption that
counsel's conduct was adequate and within the exercise of reasonable
professional judgment and the wide range of reasonable professional
assistance.  Strickland, 466 U.S. at 688-90.

In determining prejudice, a reasonable probability is a
probability sufficient to undermine confidence in the outcome of the
proceeding.  Strickland, 466 U.S. at 694. In the context of a trial,
the question is whether there is a reasonable probability that,
absent the errors, the fact finder would have had a reasonable doubt
respecting guilt.  Strickland, 466 U.S. at 695.  This Court must
consider the totality of the evidence before the fact finder and
determine whether the substandard representation rendered the
proceeding fundamentally unfair or the results thereof unreliable.
Strickland, 466 U.S. at 687, 696.

A court need not address the deficiency and prejudice inquiries
in any given order and need not address both components if the
petitioner makes an insufficient showing on one.  Strickland, 466
U.S. at 697.

39

Here, because there has been no showing of either error or fundamental unfairness with respect to admission of the evidence, counsel's failure to seek to exclude the evidence was not objectively unreasonable, and could not constitute ineffective assistance of counsel in violation of the Sixth Amendment.  Cf. James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (failure to make a motion which would not have been successful or was otherwise futile does not constitute ineffective assistance of counsel and does not result in prejudice).  The state court also considered the due process claim to be cognizable on appeal; thus, the record does not reflect that counsel's conduct or omissions resulted in any injury or negative effect.

Accordingly, if it is necessary to reach Petitioner's IAC claim, the Court should conclude that Petitioner has not shown that he suffered prejudicially ineffective assistance of counsel.

VII.   Restitution

Petitioner alleges he suffered violations of his rights under state law and his right to due process of law protected by the Fourteenth Amendment when the trial court imposed restitution fines without various procedural protections, including but not limited to not holding a hearing on Petitioner's ability to pay.

Habeas relief shall be granted to a person in custody pursuant to the judgment of a state court only on the ground that the custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254.  The "in custody" requirement for a habeas petition pursuant to § 2254(a) is jurisdictional and thus is the first question a habeas court must consider.  Bailey v. Hill, 599 F.3d 976, 978 (9th Cir. 2010).  The requirement has two aspects: 1)

40

the petitioner must be in custody at the time the petition is filed, and 2) the custody must be under the conviction or sentence under attack at the time the petition is filed.  Id.  "Custody" includes physical imprisonment as well as other significant or severe restraints on liberty, but it does not include mere collateral consequences of a conviction.  Id. at 978-80.  The imposition of a fine, by itself, is not sufficient to meet the jurisdictional requirements of § 2254.  Id. at 979 (quoting Williamson v. Gregoire, 151 F.3d 1180, 1183 (9th Cir. 1998)).  Further, liability under a restitution order is not a sufficiently serious restraint on liberty to warrant habeas relief.  Bailey v. Hill, 599 F.3d at 979.  The mere fact that a petitioner is physically in custody when challenging a restitution order is insufficient to render the claim cognizable where the petitioner is not challenging the lawfulness of his custody under federal law.  Bailey v. Hill, 599 F.3d at 979-980, 984.  Mere physical custody does not provide the required nexus between a petitioner's claim and the unlawful nature of the custody; instead, § 2254(a) requires that the substance of the claim being asserted must challenge the legality of the custody on the ground that it is, or was imposed, in violation of the Constitution, laws, or treaties of the United States.  Id. at 980-81.

Further, the remedy for restitution claims, namely, eliminating or altering a money judgment, has no direct impact upon, and is not directed at the source of the restraint upon, the Petitioner's liberty.  Instead, it would affect only the fact or amount of the restitution that has to be paid.  Id. at 981.

1   Accordingly, it will be recommended that Petitioner's
2   restitution claim or claims be dismissed as not cognizable in this
3   proceeding.

4   **VIII.   Ineffective Assistance of Appellate Counsel**

5   Petitioner alleges he suffered a violation of his right
6   protected by the Sixth and Fourteenth Amendments to the effective
7   assistance of appellate counsel because appellate counsel failed to
8   raise crucial issues, including the ineffective assistance of trial
9   counsel, procedural due process violations associated with the
10  restitution order, and the insufficiency of the evidence to support
11  Petitioner's conviction of homicide.  (Pet., doc. 1 at 5, 54-57.)

12  Here, neither trial nor appellate counsel was ineffective.
13  Further, as the following discussion reflects, the evidence is
14  sufficient to support the judgment.  Thus, Petitioner has not shown
15  that any conduct of counsel was objectively unreasonable and
16  prejudicial as required by the Strickland standard.  Accordingly, it
17  will be recommended that Petitioner's claims of ineffective
18  assistance of appellate counsel be denied.

19  **IX.   Sufficiency of the Evidence**

20  Petitioner alleges that the evidence is insufficient to support
21  his conviction of being the shooter of the homicide victim because
22  gunshot residue tests of Petitioner were negative, whereas tests of
23  Carrasco and Romero were positive; the only evidence Petitioner wore
24  gloves all night was unreliable because it came from Romero; the
25  government failed to test the gloves for gunshot residue or for DNA;
26  and there was no evidence of Petitioner's DNA on the gun.  (Pet.,
27  doc. 1 at 5, 57-64.)

28

Alternatively, Petitioner contends that if the issue of the sufficiency of the evidence was not preserved for review, Petitioner's appellate counsel was ineffective for failing to raise it.

### A. The State Court Decision

On state habeas filed in the CSC, Petitioner argued that there was insufficient evidence to support his conviction of first degree murder. (LD 18, 55-62.)  The California Supreme Court summarily denied the claim. (LD 19.)

### B. Analysis

To determine whether a conviction violates the constitutional guarantee of due process of law because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light most favorable to the prosecution. Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008. It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict. Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008.  The relevant

43

inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction; however, mere suspicion or speculation does not rise to the level of sufficient evidence.  United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see Jones v. Wood, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence from a review of the record.  Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101. However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law. Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per curiam).  For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts.  Id.

Under the AEDPA, federal courts must apply the standards of Jackson with an additional layer of deference.  Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2062 (2012); Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable

application of the Jackson standard to the facts of the case. Coleman v. Johnson, 132 S.Ct. at 2062; Juan H. v. Allen, 408 F.3d at 1275.  The determination of the state court of last review on a question of the sufficiency of the evidence is entitled to considerable deference under 28 U.S.C. § 2254(d).  Coleman v. Johnson, 132 S.Ct. at 2065.

Here, the state court reasonably applied the Jackson standard in concluding that the evidence was sufficient to support Petitioner's conviction of first degree murder as an aider and abetter.  Where, as here, the state court interpreted and applied state law, this Court is bound by the state court's interpretation and application.  Langford v. Day, 110 F.3d at 1389.

Under California law, "All murder which is perpetrated... by any... kind of willful, deliberate, and premeditated killing... is murder of the first degree."  Cal. Pen. Code § 189.  In the context of first degree murder, "'[t]he word "deliberate" means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.  The word "premeditated" means considered beforehand.'" People v. Perez, 2 Cal.4th 1117, 1123, (1992) (quoting CALJIC No. 8.20).  "Premeditation and deliberation do not require an extended period of time, merely an opportunity for reflection." People v. Cook, 39 Cal.4th 566, 603 (2006).  In People v. Anderson, 70 Cal.2d 15, 27 (1968), the CSC articulated factors to consider in assessing the sufficiency of evidence to prove that a murder was premeditated and deliberate.  "[T]he Anderson court identified three categories of evidence pertinent to the determination of premeditation and deliberation: 1) planning activity, 2) motive, and 3) manner of

killing."   <u>People v. Perez,</u> 2 Cal.4th at 1125.   The court

emphasized, however, that "[t]he <u>Anderson</u> factors, while helpful for

purposes of review, are not a *sine qua non* to finding first degree

premeditated murder, nor are they exclusive."   <u>Id.</u>

Here, evidence that Petitioner armed himself, planned with his

cohorts to "jump" someone, drove around looking for someone to jump,

provided the loaded gun to the shooter, wore gloves throughout the

evening, congratulated the shooter after the shooting, drove the

getaway car, and disposed of the gun warranted a conclusion that

Petitioner intended to kill the victim and deliberated with respect

to the killing of the victim.

Further, the evidence supports a conclusion that under state

law, Petitioner was guilty as an aider and abettor.   An aider and

abettor is one who acts with both knowledge of the perpetrator's

criminal purpose and the intent of encouraging or facilitating

commission of the offense.   (LD 10 at 417 [CALCRIM No. 400].)   When

the evidence is viewed most favorably to the judgment, at least one

fairminded jurist could find that the CSC's denial of the claim was

not inconsistent with Supreme Court precedent.

The evidence demonstrated that Petitioner and his cohorts

intended to kill the victim because together they stalked the

victims with a lethal weapon and then made it possible for one of

their group to shoot the victim repeatedly and then to flee and

attempt to dispose of evidence.   Petitioner's knowledge and intent

were demonstrated by his possession of the weapon before the

offense, planning and searching activity, providing the lethal

weapon at the critical time, driving the getaway car, and

congratulating the shooter.   In light of the evidence warranting an

inference that Petitioner aided and abetted the homicide, the state court properly concluded that in light of the pertinent state law, the fact that Petitioner might not personally have been the one to shoot the homicide victim did not render the evidence insufficient to support Petitioner's conviction.  As such, the state court's rejection of Petitioner's claim that appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim on direct appeal must also fail.

Accordingly, it will be recommended that Petitioner's IAC claims be denied.

IX.   Evidentiary Hearing

Petitioner requests an evidentiary hearing.  (Pet., doc. 1 at 74.)

The decision to grant an evidentiary hearing is generally a matter left to the sound discretion of the district courts.  28 U.S.C. § 2254; Habeas Rule 8(a); Schriro v. Landrigan, 550 U.S. 465, 473 (2007).  To obtain an evidentiary hearing in federal court under the AEDPA, a petitioner must allege a colorable claim by alleging disputed facts which, if proved, would entitle him to relief. Schriro v. Landrigan, 550 U.S. at 474.

The determination of entitlement to relief is, in turn, is limited by 28 U.S.C. § 2254(d)(1), which requires that to obtain relief with respect to a claim adjudicated on the merits in state court, the adjudication must result in a decision that was either contrary to, or an unreasonable application of, clearly established federal law.  Schriro v. Landrigan, 550 U.S. at 474.  In analyzing a claim pursuant to § 2254(d)(1), a federal court is limited to the record before the state court that adjudicated the claim on the

47

merits.  Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

Thus, when a state court record precludes habeas relief under the limitations set forth in § 2254(d), a district court is not required to hold an evidentiary hearing.  Cullen v. Pinholster, 131 S.Ct. 1388, 1399 (2011) (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).  An evidentiary hearing may be granted with respect to a claim adjudicated on the merits in state court where the petitioner satisfies § 2254(d)(1), or where § 2254(d)(1) does not apply, such as where the claim was not adjudicated on the merits in state court.  Cullen v. Pinholster, 131 S.Ct. at 1398, 1400-01.

An evidentiary hearing is not required where the state court record resolves the issues, refutes the application's factual allegations, or otherwise precludes habeas relief.  Schriro v. Landrigan, 550 U.S. at 474.  No evidentiary hearing is required for claims based on conclusory allegations.  Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994).  Likewise, an evidentiary hearing is not required if the claim presents a purely legal question, there are no disputed facts, or the state court has reliably found the relevant facts.  Beardslee v. Woodford, 358 F.3d 560, 585-86 (9th Cir. 2004); Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir. 1992).

Here, Petitioner has not alleged disputed facts which, if proved, would entitle him to relief.  As the foregoing analysis reflects, the state court record precludes relief pursuant to 28 U.S.C. § 2254(d).  Accordingly, it will be recommended that Petitioner's request for an evidentiary hearing be denied.

X.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals

48

from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Habeas Rule 11(a).

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id. An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed. Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial

49

of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

XI.   Recommendations

Based on the foregoing, it is RECOMMENDED that:

1)   Insofar as Petitioner raises state law claims or claims regarding restitution, the petition be DISMISSED without leave to amend;

2)   Petitioner's motion for an evidentiary hearing be DENIED;

3)   The petition for writ of habeas corpus be DENIED;

4)   Judgment be ENTERED for Respondent; and

5)   The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.

///

///

1  _Wilkerson v. Wheeler_, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing

2  _Baxter v. Sullivan_, 923 F.2d 1391, 1394 (9th Cir. 1991)).

3

4

5  IT IS SO ORDERED.

6      Dated:   **May 19, 2015**                    **/s/ Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28